to announce our final case for argument this morning. 20-1906 from the Eastern District of Missouri, Lana Weinbach v. The Boeing Company et al. We'll hear from Ms. Weimer. Thank you, your honor. Good morning. May it please the court. My name is Sarah Weimer and I represent Lana Weinbach, the appellant in this matter. We are here on an appeal of the district court's order granting summary judgment in favor of Boeing and ComputerShare on the grounds that Ms. Weinbach's claims are barred by the five-year statute of limitations. The overriding question on this appeal is what would a reasonably prudent person in this situation know and at what time? The court's review of summary judgment is de novo and with all the facts in front of you, you will see that a reasonably prudent person in this situation would not have had notice until March 8th, 2013 and therefore we're respectfully requesting that this court reverse the district court's order. Missouri revised statute 516.100 states a claim accrues not when damages I'm sorry when damages are sustained and capable of ascertainment. In Powell v. Chaminade, the Missouri Supreme Court defined the capable of ascertainment test as when evidence was such to place a injury and substantial damages may have occurred and would have undertaken to ascertain the extent of those damages. This is an objective test from the standpoint of a reasonable person in plaintiff situation. There are three separate events at issue in this case. First, a 2008 1099. Second, a lack of 1099 starting in 2010 and third, a phone call to the Missouri Treasurer's Office in 2013. Counsel, I have a question for you, a preliminary question. I know the briefing and the district court didn't focus on this but let me ask you this and it'll probably give rise to a follow-up which is, is it undisputed that these notices that the Treasurer's Office sent out these notices and tried to reach your client? It is disputed, your honor. Although they have produced testimony and evidence, I'm sorry, not testimony, they have purported to produce evidence that they sent out notices, there is no evidence in the record to confirm that Weinbach received these notices. Well, that's different. No, I'm asking, I'm asking whether or not it's disputed that they tried to reach out either both through notices, I think there were emails, mail and phone. I understand that you dispute whether she received them but is there any dispute that they were sent? No, your honor, there is no dispute that they were sent. Well, isn't that sort of a problem though because I mean here's the thing, you know, we have the mailbox rule and I know it doesn't exactly apply here but here you have multiple ways of trying to reach your client and all we have is a self-serving response which is I never received them but it's undisputed that the Treasurer's Office made all of these attempts to contact her and what I'm worried about here is that a and that's a problem and it's also undisputed that your client always checked the mail. So I'm trying to figure out how to resolve all of this in terms of the statute of limitations. Your honor, because it is disputed as to whether she received them, I believe that goes to be a question of fact for the jury to decide. I understand her testimony is the only definitive evidence that we have to show that she didn't receive it but there's really no other way to she was receiving that mail. Suppose that the Treasurer's Office, and I know this isn't the case, sent 200 days straight, sent a notice or a postcard in the mail and there's evidence of that and your client says I haven't received it. Is that enough to avoid summary judgment? Your honor, that's not the situation here. They've provided evidence stating that they sent mail. We don't know how much exactly. We don't have the dates that they were sent and we do not have copies of this evidence. All we have is a spreadsheet purporting to show that they sent out notice. We don't know how often, what it was, or any copies. That's why I asked the hypothetical but I just don't know where we draw the line. I mean I would have a hard time saying that a notice sent out every day for 200 days is not sufficient and I just don't know where that line should be drawn. And I would agree with you on that point but again I think it would need to be in the record evidence showing we tried this many times. Here's copies of it. We definitively did that. Counselor, I'm sorry. Am I speaking over somebody? No, your honor. Okay. I have some factual questions as well. Rather basic ones. Was this a brokerage account that we're talking about here? What kind of account was this? It was shares held through Boeing, yes. I'm sorry? It was Boeing shares, your honor. I know but it was the account. Was it a brokerage account? There's an account that's called, you know, account 345, right? What kind of account was it? Your honor, I apologize. I don't have that exactly in front of me. I know it was an account held through Boeing. The specifics as to what exactly kind of account it was, I do not have an answer for you on that and I apologize. Was there anything else in this account? I mean, were there account statements set as far as the record is concerned? No, your honor. This account only produced and sent out the 1099s which I will be discussing. So the 2008 1099 from Boeing did reflect... I'm sorry, I'm not, I'm sorry. Before you go on, I want to pursue this. It said, the record says that this was a joint survivorship account. Was it really a joint account or was it just an account in the name of the father with your client as a POD on it? It was a joint. Free on death.  So were they both being sent these 1099s? No, your honor. Both to one address or what? Both to one address. I see. Okay. And was that true of account 377 as well? Yes, your honor, it is. Okay. Thank you very much. You're welcome. So the 2008 1099... I'm sorry, let me back up. So as you stated, Mr. Weinbach, Weinbach's father and her jointly held this account. It was registered to her father's social security number. So he was the one managing this account as well as reporting the dividends on his tax returns, which he filed and prepared himself. So she was not reporting these on her tax returns? No, your honor. The 345 account was in her father's social security number. But if they were joint tenants, she was entitled to part of that income. Is that right? That may be correct, your honor. However, the way they had handled them, as he was always reporting it for that account. Okay. Thank you. Thank you. Mr. Weinbach died in January of 2009, which left Ms. Weinbach with the task of filing his 2008 tax return. She used a three-year extension and filed in 2012. So in 2012, the situation we had was a 68-year-old woman trying to file her deceased father's taxes which she had never helped him prepare before. Because her father had always handled this account and reported the dividends on his taxes, Ms. Weinbach would have no reason to know whether the dividends had increased or decreased. The appellees argue and the district court did point out that Ms. Weinbach and her father also jointly held another account through Boeing with similar shares. Now Ms. Weinbach's social security number was registered to this other account, and so she reported the dividends for that account on her taxes. The appellees argue that because the dividends on the account she reported had increased while the dividends on the account her father reported had decreased, this should have alerted her there was an issue. However, as I pointed out, filing her father's 2008 tax returns would have been her first interaction with his tax documents, and she would have no reason to know whether the dividends had increased or decreased, and therefore the 2008 1099 was insufficient to put her on notice. The next event I'd like to discuss is the lack of 1099 starting in 2010. Again, the overarching question is what would a reasonably prudent person know and at what time? In Gatos v. Aimhoff, applying the Powell Standard, the court stated in order for the statute to plaintiff on notice to inquire further. From an objective standpoint, a plaintiff would not have notice of missing 1099s until filing their tax return. The whole purpose of a 1099 is for tax preparation. In fact, it states at the top in bold capital letters, IMPORTANT TAX RETURN DOCUMENT ENCLOSED. As any reasonably prudent person does as tax season approaches, you gather your documents as you receive them, you set them aside in a pile, folder, whatever your filing system is, and they sit there until you actually go to prepare your tax return. I'm sorry, your honor, can you repeat that? Were these actually received by her? Are you conceding that? Or she just didn't look at them? No, the issue is, so after 2008, since the shares had been sheeted in 2008, Ms. Weinbach did not receive any more 1099s starting in 2009. And the issue is, when would someone be put on notice they were missing? When did she get them? When did she get them? She did not receive them anymore because Boeing no longer held these shares. Well, what about account 377? Was she getting... 377 she was receiving, yes, your honor. There's nothing in the record to indicate that these were that the 1099s would have been sent together or separately by Boeing. Okay, thanks. I'm sorry, Judge Strauss. No, no, completely fine. So the chemical bank case, you highlighted the two things that where I think chemical bank comes in the 1966 Missouri case, and you've got no longer getting the 1099s and you have a decrease in dividends. And as you know, in that case, the president of the union, I guess, cashed the dividend check and the court said, well, the union would have known when it didn't receive the dividend check, that they needed to do a reasonable investigation and figure out where those dividends went. It seems to me that the combination of the two things here at least rises to the level of what we saw in the chemical workers case, if not more information for your client. What's your response to that? Your honor, again, our client would not have had notice from the 2008 1099 if the she didn't get those 1099s after that, again, she would have nothing to compare to. So that would have given her any kind of notice. And as far as not receiving the 1099s for tax year 2009 and on, that is different from receiving the dividend checks because not receiving just the 1099s had no direct impact on Winebot's physical tangible income. Whereas in chemical workers, they were expecting to actually receive this money and affect on their physical income. If you're missing money in your account and you're expecting to get an actual check with money, a reasonable person is going to notice when they don't get it. It sounds to me like really what the core of this, and I don't want to put words in your mouth, but your argument is that really the father, and this gets to some of Judge Arnold's questions, but the father was receiving the income and your client was not. And that's what distinguishes it a little bit from chemical workers, which is really the thing that would have created the notice is the potentially are these documents, but she really, she wasn't getting the income anyway. So maybe that's a different case than chemical workers. Is that, am I reading you correctly? I would agree with that, your honor. Yes. And then at a bare minimum, I'd say a question remains for the jury to decide here. In Crawford v. Distributor Operations, the court ruled when contradictory or different conclusions may be drawn as to when a reasonable person in would have been put on notice. It is a question of fact for the jury to decide whether a reasonably prudent person in this situation would have noticed a decrease in dividends on the 2008 1099 or the missing 1099s after 2008 is a question for the jury. There's no undisputed evidence that Weinbach did not have notice of these until within the statute of limitations. However, we understand this is an objective test. So the question is not when did Weinbach actually have knowledge or awareness of these things, but when should a reasonably prudent person such as Weinbach had notice of these things and because different conclusions can be drawn, this is a question for the jury to decide. And if there are no further questions, I'd like to reserve my remaining time for rebuttal. Thank you. Very well. Thank you, Ms. Weimer. Court will hear from Ms. McFerrin Barron. May it please the court. My name is Gina McFerrin Barron, counsel for the appellate Boeing Company. Because our arguments overlap, I'll be presenting arguments on both behalf of computer shares and the Boeing Company. I have reserved some time so that if the court should have some questions for Ms. Silva, counsel for computer shares, that there will be some time for that. Your honors, this case involves stock that went missing in 2008. That year, the unclaimed Boeing stock in the account held by the appellant and her father was turned over to the state as required by the Unclaimed Property Act. The state sold the stock and compensated the appellant by paying her the proceeds from that sale plus money for all the accumulated dividends. The appellant, however, waited until March 2018, nearly 10 years after that stock went missing from her account to file this action against Boeing and computer shares. The district court correctly applied the five-year statute of limitations, finding three undisputed events were sufficient to put a reasonably prudent person on notice that that stock had gone missing. First, the appellant didn't receive any 1099-DIVs for the account after tax year 2008. Now, it's undisputed the appellant testified in her deposition that she knew what assets she and her father owned at the time of his death in January of 2009. She received a 1099-DIV for tax year 2008, and she described in the declaration that she filed in the district court that that 1099 reflected a significant amount of dividends. Yet, when she stopped receiving those 1099s and didn't receive one for tax year 2009, 2010, and 2011, she took no steps to try to ascertain what had happened to the shares in the account. Additionally, in addition to those facts, the 1099 that she received, she also received a steep decrease in dividends, a 71% drop in dividends from the previous year, and that also would have given her additional notice that there was a problem with the account. And then finally, in 2012, she sat down to do her father's tax returns, and she had that 2008 1099 at that point in time, and at that point in time, she had all the information any reasonable prudent person would have needed to determine that there was a problem with the account. Each of these individual undisputed events is sufficient to put her on knowledge and a reasonable prudent person on knowledge that there was a problem with the account, but certainly cumulatively that was sufficient to trigger the statute of limitations. Counselor, let me ask you about this. So CompuShare hits this pretty hard, I think, in their brief, as I recall, but it's the point I asked opposing counsel about earlier, which is you have an undisputed issue as to the treasurer's the plaintiff here multiple times in multiple ways. I think it even included publication as well, and you have an undisputed issue of fact that the plaintiff picked up the mail on a regular basis. Why isn't Boeing pressing that? Am I off the beaten path? Is there something wrong? Why isn't that a reason to push for affirmance here? Your Honor, I agree that is sufficient also to affirm the district court's decision below. The appellant has contested whether she ever received that mail or not. A reasonably prudent person checks their mail, they read their tax records, they pay attention to them. So yes, I would argue that that's sufficient also as well, but we have these other three undisputed events that I think are not even contested by the appellant. So I think we can look to those as well and not necessarily have to deal with her contention that she didn't get these things in the mail, even though in the regular course, she should have received them. And as Your Honor pointed out, I mean, this case is very similar to the chemical workers case. And that case stands for the proposition that once an income stream in the form of dividends is cut off, there is a duty to go and inquire as to what could have happened. Now, the appellant attempts to distinguish that case on a couple of points. One, that it was a check, not a 1099 that was being received in the chemical workers case. But Your Honor, again, a reasonable prudent person checks the mail, pays attention to important tax records, and doesn't wait until they sit down to do their tax records to know what those tax records are, what they should reflect. Let me ask you a question about that, counsel. We're talking about the reasonably prudent person here. Is this a case about what a reasonable person is charged with knowing if he or she had acted reasonably? Or is this a case about what a reasonable person would do based on what he or she actually knew? Your Honor, if I understand the question, I mean, it's a case about what a reasonably prudent person would have done based upon the information that they had and a reasonably prudent person had, not necessarily what she would have discovered had she been acting reasonably. Your Honor, yes. The standard is whether they are put on notice that there could be a injury or substantial damages. Wait, wait, just, I mean, on the basis of the facts they actually knew, even though that person would have known more if he or she had been acting reasonably. I'm sorry, Your Honor. Yes. I mean, if you look at the way Powell articulates the standard, it's what a person in that position would have known and then could have gone on. Once they're put on notice, then there's a duty to go and try to ascertain the situation. In this case, the appellant was put on notice when she stopped receiving the 1099s. Okay, I'm sorry. There's a delay here. So I'm stepping on you. I apologize for that. There's a delay in the audio. So what is the, what's the state of the record on how it was that she went going, went about going, managing her father's affairs after his death? Well, Your Honor, it is undisputed. She testified in her deposition that she knew what assets that they owned. And it's also undisputed that she received the 1099 from 2008. And she said in her declaration filed in the court that it reflected a significant amount of dividends. And it's undisputed that she didn't receive any 1099s after tax year 2008. And those facts. But when did she know that? But she certainly knew it by 2012. Is that your position? Yeah, she certainly knew it. But not necessarily that she necessarily knew it before then. Your Honor, that's my point. What do we, how do we know what she was doing in the interim? Your Honor, and I may have misapprehended your question. So let me go back. What the standard is, is what a reasonably prudent person in that situation would do. Now. I agree what her subjective knowledge was. The fact that she subjectively said she didn't know about this in 2000 until 2013 is not the standard. It's what a reasonably prudent person who didn't receive tax records that they should have received in 2009, 2010, and 2011, what they would have done in response to that. So I apologize. I may have misapprehended your question. No, you answered it. I appreciate that. Thank you. So again, Your Honors, whether it's a check or 1099 is not really a significant difference here. And whether she was receiving it in the form of income for a check or through 1099. And additionally, as the opponent argues that the difference in what happened in 2008 versus what happened in the past with that steep drop in dividends. Your Honors, even if that was not sufficient on its own, the cumulative nature of the evidence here certainly was sufficient to trigger the statute limitations. This is much like this court's decision in Mahana versus U.S. Bank. In that case, the plaintiffs have pledged some gold coins for debt. Those gold coins went missing from the bank. And when the plaintiffs started to make inquiry, the court noted that maybe the first inquiry wasn't enough to put to trigger the statute limitations. But the cumulative nature of the evidence was sufficient to trigger the statute limitations. And certainly in this case, not getting 1099s after 2008, getting 1099s for the other account after that point in time, the steep drop in dividends in 2008, and then sitting down in 2012 and having all of that information in front of her was sufficient that a reasonably accruing person would have been put on I would also say that the appellant makes reference to the 2013 time frame when she sat down and she actually did her tax returns. And again, that would be a subjective standard. If we waited until someone actually took the tax records that they're supposed to receive and pay attention to, on the front of them, important tax records, and sit down and do their taxes, and if they get an extension, that extends and tolls the statute of limitations, that is really a subjective standard and does not comply with the requirements of the appellate reasonable prudent person standard. Your Honors, if there are no further questions, I'll just summarize and state that we believe the undisputed evidence in the record was sufficient to support a finding under the PAL standard that the statute of limitations had expired. And for those reasons, we ask that the court affirm the district court summary judgment. Thank you, Your Honor. Thank you. Ms. Silva? Thank you. May it please the court, Patricia Silva for defendant appellee computer share. And just briefly, I wanted to speak to the two notice issues and also just clarify something for the record, which I believe in Judge Strauss's question indicated that you understand what the evidence is. But there's two notices that are discussed. There's the notice that was sent by my client computer share in September of 2007. And there's the notices that were sent by the treasurer's office. And the record for support of the treasurer's notice, which I understand that counsel does not dispute was set, is substantially based off of the treasurer's appendix and the exhibits to that deposition and Lana Mossman's testimony, the representative from the treasurer's office. And then in support of the computer share notice that was sent in September of 2007, we start with the spreadsheet that counsel referred to, which is a business record of computer share, as well as computer shares, corporate representative who testified that the notice was sent. And the year is only an exemplar of what that notice constituted due to their business practices and technology limitations in 2007. They did not keep each individual copy. Correct me if I'm wrong though on the computer share. And that's the reason why I didn't mention it in my question. I want to say that there was some testimony at some point that said we send this out in the ordinary courts, but nobody could say for sure. This is what it ordinarily looks like, but nobody could say for sure that it was actually sent out in this case and that who was addressed to, et cetera. Am I wrong about that? You're not. The evidence that supports that it was actually sent out in this case to the address is at computer share 117, which is the spreadsheet of a business record. And then the testimony refers to, as you said, what the usual practice was. And then that's the sending of the notice. And then in terms of on Ms. Weinbach's end, it's also not disputed, as everyone's been discussing, that she did receive her mail. And there's different versions as to the process that she used for receiving that mail. Different cases, she's testified different ways. But ultimately, the point is that it was received although the home was condemned by University City, the mail was continued to be received. And she was living with her father at the Gatesworth senior living community, and the mail was brought to there. And that then Ms. Weinbach had a dispute with the Gatesworth regarding personal property, including mail, that she listed in a lawsuit as having been that those facts do not make a genuine dispute of material fact that the notice was sent by computer share. And that would be another date, which is September of 2007, that Ms. Weinbach would have been on notice of the fourth. That notice would have been about the forthcoming escheat, and that if action was not taken on the account, that it would be escheated to the state. So those are the brief points that I want to make. And we do understand that Judge Roth did disagree with us on that point. But under this court's standard of review, we submit that there is sufficient record evidence to find the computer share notice, as well as the state of Missouri's notices prior to March of 2013, which is when the statute of limitations end point is for filing suit. And if there are no questions, we respectfully submit that the court should affirm Judge Roth's entry of summary judgment below. Thank you, Ms. Silva. Ms. Weimer, you have some rebuttal time. Thank you, Your Honor. I would briefly like to touch on the 2007 due diligence from computer share that was just spoken about. I don't want to get into the weeds on it, but I would ask you to direct your attention to our reply brief, which addresses that issue in specifically cites in the record on our appendix at page 86, that there were two letters sent from computer share to Weinbach. She received them and responded to them during the exact time in question, which refutes the suggestion from computer share that they sent her a notice and she failed to respond. Additionally, counsel made point saying in 2012, Weinbach would have everything in front of her to prepare her father's 2008 tax return. There's nothing in the record that states how Weinbach organized her documents, whether that was by account or by year or some other way. So we don't know definitively how did Weinbach file, what all was in front of her at the time. And therefore we can't say she in fact had everything in front of her. At minimum, that would remain as a question for the jury to decide. Again, and our suggestion is that in 2013, Ms. Weinbach sat down to file her 2009 taxes. And it was at that point that any reasonably prudent person would review their tax documents in preparation to prepare. And that would be when a reasonably prudent person would have noticed they were missing any documents. And if there are any further questions, I would just ask that we respectfully request this court to reverse the district court's order. Thank you. Very well. Hearing no questions, the case will be submitted and decided in due course. We appreciate your appearance today. Ms. Rudolph, does that complete our calendar for the day? Yes, it does, your honor.